UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. FERARI, | : | **CIVIL NO. 1:07-CV-1287** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.

On January 4, 2005, the plaintiff, Lisa A. Ferari, applied for disability insurance benefits. She claimed that she became disabled on November 17, 2004, as the result of a combination of impairments: multiple sclerosis, urinary

incontinence and depression.  The claim was denied initially and on reconsideration.  The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on June 20, 2006. (Tr. 204-231).

At this hearing the plaintiff and a vocational witness testified.

The plaintiff stated in her testimony that she is 45 years old, and is a high school graduate with a college associate's degree in business.  She stopped working on November 17, 2004, having received unemployment compensation after that for six months.  She takes Zoloft for depression. She takes care of her personal bathing, grooming and dressing. She lives with her parents.  She does laundry, runs the vacuum cleaner, helps with the dishes, takes out the garbage, burns the papers and shovels snow.  She goes to the YMCA three times a week to exercise in the pool.  She does not do the grocery shopping; her father does that.  She reads and watches television.  She can raise and lower her legs from a seated

position and can use her arms.  But her arms hurt when she puts them overhead.

She smokes.  She does not drink alcohol.  She sleeps for eight hours a night.  She can sit for a couple of hours, but must make frequent trips to a bathroom.  Her legs stiffen up after a couple of hours of sitting.  She can not stand for long (more than about five minutes) without getting tired.  She can walk about a block.

Her medication for her multiple sclerosis (MS) has been pretty effective in controlling her symptoms.  The Zoloft that she takes helps to manage her depression.  Her medication has not helped with her left hand numbness.  Steroids have eased the burning sensation that she was experiencing in her left side.  The Detrol that she takes for her bladder control problem may be helping her to empty her bladder more than half way.  She gets some hives like skin reactions as a by product of her medication(s).

Stress aggravates her symptoms.  She has difficulty handling conflict.  She has left side pain and skin sensitivity.

Her past work at Shopvac involved going over vacuum cleaners and preparing them for shipping and preparing and maintaining accompanying records.  She had to stop doing that job when she had symptoms that impacted her work performance and was diagnosed with MS.  Shopvac changed her work assignment.  In December of 2004 her job was eliminated.

She spent about 10% of her time in customer service during a block of time that she worked for Shopvac.  She handled consumer complaints.  This work was stressful for her.

She stated that throughout a day she must go to the toilet as often as every half hour in the morning and every hour later in the day.  She needs to rest about two hours in the course of a day.  She feels that she could work for no more than four hours a day, because she gets so tired.

The vocational witness stated that the plaintiff's work as a customer service representative was sedentary and semi-skilled.  When she was handling vacuum cleaners, that was medium duty work.  If she can do light work with certain described limitations, the vocational witness stated, then there are jobs that she can perform.  The vocational witness stated that if the plaintiff requires more than two breaks per day, there are not jobs that she could perform.

The ALJ, stating that the claimant "is eloquent enough to tell us what she's going through," informed the plaintiff's counsel that the testimony of the plaintiff's parents, who were present, would not be taken[1].

On August 7, 2006, the ALJ issued her decision denying the plaintiff benefits.  (Tr. 9-18).  The Appeals Council denied the plaintiff's request for review (Tr. 3-5), making the ALJ's decision the final decision of the Commissioner.

---

1.   However, the ALJ subsequently decided the application against the plaintiff largely on the basis of a finding that the plaintiff was not credible.

5

The plaintiff filed her complaint with this court on July 16, 2007.  The defendant filed an answer to the complaint and a copy of the administrative record on September 4, 2007. Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed her brief on October 15, 2007 and the defendant filed his brief on November 16, 2007.   No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately

6

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The

Commissioner must sequentially determine: (1) whether the
claimant is engaged in substantial gainful activity; (2)
whether the claimant has a severe impairment; (3) whether the
claimant's impairment meets or equals a listed impairment; (4)
whether the claimant's impairment prevents the claimant from
doing past relevant work; and, (5) whether the claimant's
impairment prevents the claimant from doing any other work.
*See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

     The disability determination involves shifting burdens
of proof.  The initial burden rests with the claimant to
demonstrate that she is unable to engage in her past relevant
work.  If the claimant satisfies this burden, then the
Commissioner must show that jobs exist in the national economy
that a person with the claimant's abilities, age, education,
and work experience can perform.  *Mason v. Shalala*, 994 F.2d
1058, 1064 (3d Cir. 1993).

     In this case the ALJ determined that the plaintiff has
not engaged in substantial gainful activity since the alleged
onset date, that she has several impairments that when

considered in combination are severe, that her impairments do not meet or equal any listed impairments, and that she is not able to perform her past relevant work.  The burden of proof accordingly shifted to the Commissioner.  The ALJ determined that the Commissioner met the burden of establishing that the plaintiff has the residual functional capacity to perform a narrow range of light and sedentary work.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff argues that the ALJ failed to afford adequate consideration to the treating physician's opinion and afforded undue weight to a one-time examiner's opinion. Secondly, the plaintiff argues that the ALJ erred in finding her testimony as to her symptoms and her limitations not to be credible when the testimony was corroborated by medical evidence and when her parents were present to testify at the hearing and their putative testimony was eschewed by the ALJ.

The plaintiff's first argument involves the ALJ's treatment of the June 1, 2006 report (letter) of John P. Carlson, M.D., signed by Sharon S. Zboray, MSN, CRNP in Dr. Carlson's absence. (Tr. 195-196).  Dr. Carlson stated in the letter that in his opinion the plaintiff is totally, permanently and completely disabled from work.  The ALJ considers the letter to have been the letter of the certified registered nurse practitioner who signed it and not the declaration of Dr. Carlson, and apparently discounted the treating physician's opinion in large part on this basis[2]. Upon examination of the ALJ's discussion (Tr. 15) of Dr. Carlson's statement and of Dr. Olinsky's earlier statement of March 17, 2005 (Tr. 166-167), a statement (Dr. Olinsky's) which the ALJ finds to be more probative even though Dr. Olinsky was a consulting physician and Dr. Carlson is the regular treating physician, there is an absence of a substantial evidence basis for the inferences that the ALJ has

---

2.  It must be noted that the plaintiff upon her appeal to the Appeals Council addressed this possible basis for the ALJ's adverse ruling by submitting the same letter (i.e., a copy thereof), but signed by Dr. Carlson.  The Appeals Council failed to address the substance of the plaintiff's reason for the submission to it, and considered the submission to be duplicative.  *See,* Tr. 4. Thus, the adverse decision here clearly does rest upon a failure to consider evidence submitted by the plaintiff's treating physician.

10

drawn.  First, the characterization by the ALJ of Dr. Olinsky
as, like Dr. Carlson, a treating neurologist, is at odds with
the first sentence of Dr. Olinsky's letter.  Dr. Olinsky
described himself as a consultant on the matter of disability.
Also, the meaning of "normal examination findings" as used by
the ALJ in reference to Dr. Olinsky's report, and the
inferences drawn from this characterization, are not explained
by the ALJ.  That statement by the ALJ does not support her
finding that the Commissioner had carried his burden.  Also,
the absence of "great or appreciable differences," as the ALJ
stated it, in the plaintiff's condition from 2005 to 2006 was
an inadequate rationale for discounting the 2006 treating
neurologist's opinion of disability of an MS patient.  It was a
rationale that assumed the correctness of the 2005 consultant's
opinion and that assumed the ALJ's own medical expertise to be
superior to that of the treating physician.  It also
erroneously assumes that the claimant must demonstrate that she
had undergone a **great** change for the worse before a finding
could be made that the Commissioner had not carried his burden
to prove that the claimant can perform substantial gainful
activity.  The claimant, as the ALJ found, has disabling

11

symptoms reasonably caused by her MS.  The ALJ fails to provide
an adequate explanation of the level of symptoms, beyond the
fact that it must exceed the current level of symptoms by a
great margin, that will warrant a determination that the
plaintiff, unable to work as a customer service representative,
also can not work as an information clerk/receptionist or order
clerk.  This adjudication that finds a loss of a capacity to do
past work, but then, even in the context of a shifted burden,
finds an ability to do other, not significantly dissimilar,
work is not supported by an adequate rationale for that
finding.

The Commissioner argues that a treating doctor's
(Dr. Carlson's) opinion that a patient is unable to perform any
work is not entitled to significant weight, because it
addresses the ultimate question of disability, citing SSR 96-
5p.  The distinction between medical factors on the one hand,
and vocational and other factors on the other, is a valid
distinction.  A medical expert's expertise does not extend to
vocational issues.  A categorization of a person as "disabled"
or not disabled within the meaning of the Commissioner's

regulations contemplates medical and non-medical factors and elements.  But SSR 96-5p emphasizes to the adjudicator the importance of making "every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."  That is not what the adjudicator did here.

In this case, a claimant with a severe impairment had been found to have lost the functional capacity to perform her past sedentary, semi-skilled work[3]. (Tr. 225-226, 16).  The burden then shifted to the Commissioner to prove that she has the residual functional capacity to perform other work.  To uphold the Commissioner's position, the court must find substantial evidence to support a finding that she can perform the limited range of light and sedentary work that the ALJ found that she can perform although she is unable to perform other light and sedentary work.  There is no presumption that a person can lift and carry and perform the other requirements of

---

3.  The vocational expert described it as sedentary and semi-skilled.  The ALJ described it as "light and semi-skilled."  Whether it was light and semi-skilled or sedentary and semi-skilled, it is certainly difficult to see how and why it is that, given that she carried the burden of proving she can not do it, the Commissioner proved to the ALJ's satisfaction that she can perform other light or sedentary work.

light work.  Such a finding must be based upon evidence.  One

doctor's opinion that a person "can perform a limited range of

light work" is inherently no less conclusory, no more evidence

based, than another doctor's statement that the person is

disabled, particularly not if the latter doctor was employing

the Commissioner's definition of disability[4].  Here, Dr.

Olinsky has said that the plaintiff can perform certain

physical functions.  Dr. Carlson has said that the plaintiff,

who is his patient, can not perform substantial gainful

activity.  When the context is recognized, that being that the

burden is upon the proponent of Dr. Olinsky's assertion, and is

not upon the proponent of Dr. Carlson's assertion, there

remains no apparent reasonable basis in the medical evidence

for a finding that the plaintiff has the residual functional

capacity to perform substantial gainful activity.  However, the

doctors' opinions could bear further development.

     The second argument of the plaintiff is that her

credibility as to her symptoms was rejected by the ALJ without

---

4.  It is important to note that SSR 96-6p, an issue as to an individual's
residual functional capacity, like an issue whether or not an individual is
"disabled," is not to be considered a medical issue.

adequate explanation, and that the rejection of her credibility
is more in error than it would otherwise appear to be in that
the ALJ had declined to hear corroborative testimony from the
claimant's parents.

The ALJ has rejected the credibility of the claimant in
large part because the plaintiff at the hearing did not appear
to the ALJ to be in chronic pain or to have the appearance of a
person experiencing serious pain over a period of time. (Tr.
16).  This mode of fact finding, fact finding based upon the
ALJ's brief observations of the claimant during the hearing,
has been rejected in the Third Circuit.  *Smith v. Califano*, 637
F.2d 968 (3d Cir. 1981); *Green v. Schweiker,* 749 F.2d 1060 (3d
Cir. 1984).  The plaintiff must establish that there is an
impairment that could reasonably produce the pain and
limitations alleged, 42 U.S.C. § 423(d)(5)(A), but is not
required to objectively prove pain itself.  749 F. 2d at 1070.
Courts, if not ALJ's, have generally agreed that the person who
does not sit and squirm or have a pale coloration is not
necessarily reliably identified as a person not in pain.

15

The ALJ found that the plaintiff's impairments could be expected to produce the kind of pain and limitations that the plaintiff says that they produce. (Tr. 16).  Accordingly, squarely framed, the central question for review comes down to whether there is substantial evidence to support the ALJ's additional "not to the extent alleged" (Tr. 16) finding. We do not see there to be substantial evidence mentioned by the ALJ to support the ALJ's  "not to the extent alleged"  undoing of the plaintiff's disability showing.  If the "not to the extent alleged" finding is supported in the record, it is supported by the ALJ's observation of the plaintiff at the hearing and the ALJ's comparison of the plaintiff's appearance to the ALJ's store of expertise in the symptomology of pain and the symptomology of MS.

The ALJ's adverse credibility determination is based upon the ALJ's own personal knowledge of the physical manifestations of pain and in particular of pain in a person disabled by MS.  The ALJ stated, at Tr. 16:

> In this case, the claimant's case in establishing
> disability is directly dependent on the element
> of pain which is of an intractable nature.  Pain

16

is subjective and difficult to evaluate, both
quantitatively or qualitatively. Nevertheless,
most organic diseases produce manifestations
other than pain and it is possible to evaluate
the underlying processes and degree of resultant
impairment by considering all of the symptoms.
Generally, when an individual has suffered pain
over an extended period of time, there will be
observable signs such as significant weight loss,
an altered gait or limitation of motion, local
morbid changes, poor coloring or station. In the
present case, the claimant has complained of pain
over an extended period of time. None of the
above signs of chronic pain is evident. While
not conclusory by itself, this factor contributes
to the determination that the claimant is not
disabled as a result of pain.

The ALJ does not set forth in any detail the basis for her

personal knowledge about manifestations of pain in a person

with the plaintiff's severe impairments underlying this opinion

and she does not set forth a description of what she has

observed upon watching the plaintiff.

The "not to the extent alleged" finding is the

essential core of the ALJ's decision. Application of the

substantial evidence standard where the decision is based upon

personal knowledge of the ALJ is not really possible. The

ALJ's reliance upon her own opinions in the subject of the

17

relationship of physical manifestations, on the one hand, and on the other hand what a claimant is subjectively experiencing, does not provide a reviewable approach to adjudication.  If a medical doctor were to have testified that a person disabled with MS has and does not have certain visible physical manifestations, the doctor could be cross examined to test the soundness of the basis for that statement.  The ALJ can not be cross examined to test the basis for her expert opinion(s).  If the ALJ can look at the plaintiff and tell that the plaintiff's testimonial assertions of her pain and limitations resulting from multiple sclerosis are not credible, a doctor presumably can do so.  Unlike the ALJ, the doctor can be questioned on the record about the observations and thought process that went into the doctor's opinion.  The court, if such an adjudicative process is followed, will have an evidentiary record that can be studied, so that the substantial evidence standard can be applied, and the claimant will have had the opportunity to show errors or weaknesses in the doctor's opinion(s).

     The ALJ does not describe the basis for her knowledge that a person who, like the plaintiff, has MS and whose

symptoms, like the plaintiff's, are symptoms that could
reasonably be caused by MS, is not disabled if she does not
also have the symptoms listed by the ALJ at Tr. 16.  The ALJ
also does not explain her reasons for considering the absence
of these additional symptoms to be dispositive even in the case
of a person with other impairments including depression and a
serious bladder condition.  The latter two impairments are not
said by the ALJ to be diagnosable through observation of the
claimant at the hearing.

        The ALJ had found the plaintiff to have a severe
impairment, one reasonably resulting in the symptoms stated by
the plaintiff, one resulting in her inability to perform her
past relevant work.  The burden thus had shifted to the
Commissioner to show that the plaintiff can perform other work.
An abstract, general, unexplained statement by the ALJ that the
claimant's symptoms are debilitating but "not to the extent
alleged" is not substantial evidence supporting the proposition
that the plaintiff can perform some other job.

It fortifies the conclusion that the ALJ's "not to the extent alleged" finding was not based upon evidence that the ALJ declined to hear the testimony of the plaintiff's parents, evidence that would have been quite germane to the issue upon which the case was to be decided adversely to the plaintiff, the issue whether she has the pain and limitations she alleges. The plaintiff's parents were present at the hearing and available to testify.  The ALJ declined to hear this testimony, assuming that her parents would support what the plaintiff had said. (Tr. 230).

Considering that the ALJ had decided after viewing the plaintiff's testimony that she was not fully credible, the importance of considering the testimony of her parents was great.  The plaintiff's parents live with her, and could have addressed her daily activities, her statements about her health and how she felt, and any changes observed or not observed by them.  Even though the ALJ may have felt that the parents could be expected to testify in a manner that they thought would help their daughter's claim, it can not be categorically ruled out that her parents would testify candidly and honestly.  It could

not be categorically assumed by the adjudicator that, assuming

a malingering child, a parent would not prefer a productive

child, would not have admonished the malingering child to

resist perceiving herself as disabled, or would not candidly

state the parent's observations and impressions.  The ALJ might

have heard, alternatively, from parent witnesses who she would

find to be credible and who were better able than their

daughter to articulate how her impairments adversely affect her

functional capacity and her ability to hold a job.  The ALJ

might have heard, alternatively, statements that fortified the

ALJ's view that the plaintiff had not been credible and that

may have provided some further grounds for articulable reasons

to justify such a view.  If the ALJ had the tentative, or

final, view at that point in the proceeding, having viewed the

claimant and having heard her testimony, that she was going to

be finding a claimant whose pain and limitations were

reasonably caused by her severe impairment not to have stated

symptomology in her testimony that was reasonably related to

her impairment, then there is not an adequate justification for

not having at least permitted the plaintiff to call witnesses

who could corroborate what the plaintiff had asserted, if only

to foreclose an appearance that an opportunity to make that
full and fair record had been denied to the claimant.

The ALJ's adverse credibility findings that determined
this case against the plaintiff are not set forth by the ALJ in
reference to any particular testimonial assertions of the
plaintiff.  The ALJ, while basing the decision to deny the
disability claim of a person with a severe impairment and with
symptoms that could reasonably be caused by that impairment
upon a finding that her symptoms description was "overstated,"
does not cite even one of the overstatements found by the ALJ
to have been made by the plaintiff.

The defendant cites *Reefer v. Barnhart,* 326 F.3d 376,
380 (3d Cir. 2003).  As *Reefer* states, the court in the
reviewing role appropriately defers to the credibility findings
of the ALJ.  The ALJ in this proceeding made an adverse
credibility determination based upon improper and unreviewable
criteria, i.e., the ALJ's own medical expertise and an opinion
that the plaintiff's pain, dizziness, numbness, weakness and
fatigue are not consistent with the medical evidence.  The ALJ

cites, however, not the medical evidence but, rather, her own medical opinions.

The decision to deny benefits in this case is not supported by substantial evidence.  It is recommended that the case be remanded with instructions to the Commissioner to proceed according to the considerations set forth in this Report and Recommendation.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  December 12, 2007.

23